UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CR-271-BR
No. 5:12-CV-198-BR

| | | |
|---|---|---|
| ALBERT EDGERTON, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent. | ) | |

This matter is before the court for initial review of a 28 U.S.C. § 2255 petition pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings. Under this Rule, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." R. Gov. § 2255 Pro. 4(b).

On 1 June 2009, pursuant to a plea agreement, petitioner pled guilty to two counts of possession with intent to distribute five grams or more of cocaine base and one count of using and carrying a firearm during and in relation to a drug trafficking crime. As part of the plea agreement, petitioner agreed "[t]o waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed . . . and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea." (Pl. Ag. ¶ 2(c).) On 8 September 2009, petitioner was sentenced to a total term of 229 months imprisonment. Petitioner appealed, and the Fourth Circuit Court of Appeals affirmed. United

States v. Edgerton, 408 F. App'x 733 (4th Cir. 2011) (unpublished). The Supreme Court denied a petition for writ of certiorari on 18 April 2011. Edgerton v. United States, No. 10-9546. Petitioner filed the instant petition on 13 April 2012.

Because petitioner's plea agreement contains a post-conviction rights waiver, the court first examines whether that waiver is valid. "[A] criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). The Fourth Circuit Court of Appeals found that petitioner's plea was knowing and voluntary, Edgerton, 408 F. App'x at 738, and therefore, the court will enforce petitioner's waiver of post-conviction rights contained within the plea agreement.

Having so found, the court must determine whether petitioner's claims are within the scope of the waiver. See Henderson v. United States, Nos. 5:05-CR-163-FL, 5:08-CV-319-FL, 2009 WL 1578578, at *2 (E.D.N.C. June 4, 2009). Petitioner asserts three claims, all alleging ineffective assistance of counsel. In his first claim, petitioner alleges that counsel was ineffective for failing to file a motion to suppress. (Pet., DE # 152, at 4.) Any motion to suppress would have to have been filed prior to petitioner's guilty plea. At the time of his plea, petitioner knew counsel had not filed such a motion. As such, this claim is within the scope of the post-conviction rights waiver and is barred. Petitioner's other claims allege ineffective assistance of counsel at sentencing. These claims are not barred by the waiver, and the court will consider their merits.

The applicable legal standard for an ineffective assistance claim is well established. Under the principles of Strickland v. Washington, 466 U.S. 668 (1984),

> a meritorious ineffective assistance claim must demonstrate two
> things: first, that counsel's performance was deficient and, second,
> that counsel's deficient performance prejudiced the defense. Under
> the second prong of *Strickland*'s test, there is a "strong
> presumption" that counsel's strategy and tactics fall "within the
> wide range of reasonable professional assistance." For counsel's
> trial performance to be deficient, he must have "made errors so
> serious that counsel was not functioning as the 'counsel' guaranteed
> the defendant by the Sixth Amendment," and that "counsel's
> representation fell below an objective standard of reasonableness."
> To establish prejudice, a defendant must show that "there is a
> reasonable probability that, but for counsel's unprofessional errors,
> the result of the proceeding would have been different." Under
> *Strickland,* a reasonable probability is a "probability sufficient to
> undermine confidence in the outcome." Furthermore, and of
> importance here, in conducting the ineffectiveness inquiry, "a
> court need not determine whether counsel's performance was
> deficient before examining the prejudice suffered by the
> defendant."

Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (citations omitted), cert. denied, 122 S. Ct. 2311 (2002).

In his second claim, petitioner alleges that counsel was ineffective at sentencing for failing to "suppress[] the relevant conduct of the five ounces of cocaine base ("crack") charge[d] to Petitioner." (Pet., DE # 152, at 5.) In petitioner's presentence report, the offense conduct section provides in relevant part that on 21 March 2007, an undercover officer witnessed petitioner with at least five ounces of crack. (PSR ¶ 11.) Defense counsel objected to this statement. (PSR Addendum ¶ 1.) At petitioner's sentencing, the case agent testified that on 21 March 2007, an undercover officer participated in a controlled purchase of approximately 13.7 grams of crack from petitioner. (9/8/09 Tr., DE # 124, at 9.) The undercover officer estimated that petitioner was in possession of approximately five ounces of crack on that date. (Id. at 7-8.) On cross-examination by defense counsel, the case agent acknowledged that the undercover

3

officer did not weigh, test, or seize the five ounces of crack that day. (Id. at 15.) Rather, the only crack seized was the 13.7 grams resulting from the controlled purchase. (Id.) Defense counsel argued that the government had not met its burden of proving petitioner had five ounces of crack on that date. (Id. at 28.) While the court did not accept this argument, (see id. at 31-33), counsel challenged the evidence appropriately, and his performance was not deficient. Petitioner is not entitled to relief on his second claim.

In his third claim, petitioner alleges that counsel was ineffective for failing to prepare a witness who testified at sentencing on petitioner's behalf. (Pet., DE # 152, at 7.) At sentencing, petitioner's father, Albert Edgerton, Jr., testified about $5,117 which was seized from a vehicle petitioner was driving on 16 September 2008 and $34,000 which was seized that same date from a vehicle at the residence of petitioner's grandmother. Specifically, he testified that he had given petitioner about $5,000 to pay to have some land he (Mr. Edgerton) owns cleared off. (See 9/8/09 Tr., DE # 124, at 22-23.) Mr. Edgerton also testified that the $34,000 belonged to him and that he owned the vehicle from which it was seized. (Id. at 23.) He stated that the money came from his lottery winnings ("hitting the number" twice for $10,000 and twice for $2,500) and doing odd jobs. (Id.) When questioned why he kept $34,000 cash in a parked car in a yard, Mr Edgerton responded, "Because I have some problems with the Internal Revenue." (Id at 23-24.) In regards to this testimony, the court stated

> Well, I don't have any trouble with the cash conversion because I find that the cash was his. When the father first started testifying, I was impressed when he was talking about the $5,000. But when he got to talking about the $34,000, that tale that he told about that was so outlandish that I don't believe anybody would believe it. I certainly didn't. I find it completely incredible. So that destroys the credibility with regard to the first part of it.

4

(Id. at 31.)  By converting the cash to its cocaine equivalency, petitioner was therefore found responsible for an additional 1109.07 grams of cocaine, (see PSR ¶¶ 14, 15), which in turn increased his guideline base offense level.

Petitioner claims that counsel should have instructed petitioner's father to bring with him to court to support his testimony his wage and income transcripts, bank statements, and W-2G forms.  (Mem., DE # 152-1, at 8.)  In support of his argument, petitioner submitted the following:

1. A bank statement for the period 20 January through 15 February 2007 indicating Mr. Edgerton had a checking account with an average balance of approximately $12,000 and a fixed term CD valued at approximately $20,000;

2. Mr. Edgerton's 2004 Wage and Income Transcript indicating gross lottery winnings of $5,000 (two winnings of $2,500 each) and unemployment compensation of approximately $3,700;

3. Mr. Edgerton's 2005 Wage and Income Transcript indicating wages of approximately $31,000 and gross lottery winnings of $10,000; and,

4. Mr. Edgerton's 2008 Wage and Income Transcript indicating wages of approximately $34,000.

(DE # 149-2, at 8-13.)  Even assuming counsel was deficient in failing to instruct Mr. Edgerton to bring these documents with him to court, petitioner has not shown that his sentence would have been different.  These documents do not definitely establish that the $34,000 seized was in fact Mr. Edgerton's, rather than proceeds from petitioner's drug dealing.  In the absence of any prejudice, petitioner is not entitled to relief on this claim.

Because petitioner is not entitled to relief on any claim he asserts, the § 2255 petition is DISMISSED.

The court finds that petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, a certificate of appealability is DENIED.

This 25 May 2012.

　　　　　　　　　　　　　　　　　　　　W. Earl Britt
　　　　　　　　　　　　　　　　　　　　Senior U.S. District Judge